# Illinois Official Reports

## Appellate Court

*City of Joliet v. Szayna*, 2016 IL App (3d) 150092

| | |
|---|---|
| Appellate Court Caption | CITY OF JOLIET, Plaintiff-Appellee, v. MALGORZATA SZAYNA, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0092 |
| Filed | October 27, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 10-OV-2535; the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part.<br>Cause remanded with directions. |
| Counsel on Appeal | Malgorzata Szayna, of Alexandria, Virginia, appellant *pro se*.<br><br>Mary J. Kucharz, Assistant Corporation Counsel, of Joliet, for appellee. |
| Panel | PRESIDING JUSTICE O'BRIEN delivered the judgment of the court, with opinion.<br>Justice McDade concurred in the judgment and opinion.<br>Justice Carter dissented, with opinion. |

**OPINION**

¶ 1     Defendant, Malgorzata Szayna, appeals from a judgment finding her guilty of failure to abate violations of the City of Joliet's ordinance code and unlawful occupancy of a rental unit. Defendant requests we vacate the judgment and remand with instructions to dismiss the complaint. We affirm in part, vacate in part, and remand with directions.

¶ 2                                        FACTS

¶ 3     On May 11, 2010, plaintiff, the City of Joliet, filed a two-count complaint against defendant, the owner of a multiple-unit apartment building located in Joliet. Count I of the complaint alleged that defendant committed the offense of failure to abate violations of the ordinances of the City of Joliet. Count I alleged that each violation was subject to a fine of up to "$750.00 per day each violation is allowed to exist in violation of Ordinance Section 8-355 of the Ordinances of the City of Joliet."

¶ 4     Plaintiff attached to the complaint a list of the ordinance violations it claimed defendant failed to abate. The list of violations is based upon an inspection of the property dated March 3, 2010, and includes the following ordinance violations:

> (1) building windows missing screens;
> (2) building screen door defective;
> (3) building doors needed to be scraped and painted;
> (4) the east porch's foundation defective;
> (5) garage siding needed to be scraped and painted;
> (6) dining room broken glass window in unit 1;
> (7) master bath toilet in unit 1 defective or missing;
> (8) unit 2 vacant;
> (9) unit 3 no entry and inspection needed;
> (10) unit 6 no entry and inspection needed;
> (11) light fixture cover missing in unit 8; and
> (12) kitchen light fixture defective in unit 8.

¶ 5     Count II of the complaint alleged that on March 3, 2010, defendant committed the offense of "failure to allow an inspection of a rental unit." Count II alleged that this violation was subject to a fine of up to $750 per day each violation is allowed to exist. Plaintiff did not file an amended complaint during the proceedings.

¶ 6     On August 10, 2010, an attorney filed an appearance on behalf of defendant. Defendant did not file an answer to the complaint. The matter would remain pending for the next four years.

¶ 7                      I. September 14, 2010, to August 26, 2014

¶ 8     At the outset, we note that the record on appeal does not contain any transcripts from the proceedings from September 14, 2010, through August 26, 2014.[1] For clarity, we note that our

---

[1] Defendant, as the appellant, bears the burden of responsibility for providing a complete record for review, and any doubt arising from incompleteness of record must be resolved against defendant. *People v. Carter*, 2015 IL 117709, ¶ 19.

discussion of this period derives from the trial court's written orders, the docket sheet, and the parties' pleadings.

¶ 9 On September 14, 2010, the trial court entered an agreed order requiring defendant to "install all applicable smoke detectors and present the building for inspection of the smoke detectors." The complaint did not include an allegation regarding smoke detectors. The trial court continued the matter for status of defendant's compliance with "all other pending building violations."

¶ 10 On October 12, 2010, the parties agreed to an order continuing the matter "for status of defendant's compliance with the requirements of the City of Joliet building code and residential inspection obligations and the curing of all housing code violations."

¶ 11 On December 14, 2010, the trial court continued the matter for status of defendant's compliance and ordered defendant to allow plaintiff to inspect defendant's property.

¶ 12 From December 28, 2010, through March 8, 2011, the parties agreed to continue the matter for status.

¶ 13 On April 26, 2011, the parties agreed to continue the matter "for trial of defendant's reimbursement to plaintiff of its building inspection fees and status of defendant's compliance with the completion of the work required by the building code."

¶ 14 On May 24, 2011, defendant failed to appear in person for trial. The trial court entered a written order requiring the following: (1) defendant was to "complete/abate violations excluding exterior sidewalk by 7/12/11," (2) defendant was to apply for and participate in the "City's sidewalk program," (3) defendant was to pay all outstanding inspection fees, and (4) plaintiff was to provide defendant with an itemized inspection bill. Unlike the May 24 order, the complaint does not include an allegation regarding the sidewalk surrounding defendant's property. Plaintiff did not file an amended complaint that included an allegation concerning the sidewalk.

¶ 15 On July 12, 2011, the trial court entered a written order directing defendant to perform the following acts: (1) apply for participation in the "sidewalk repair program," (2) "paint and scrape all windows and install replacement frames," (3) pay outstanding inspection fees of $1652, (4) and allow plaintiff to inspect the building. Defendant was provided 30 days to repair any deficiencies noted in the inspection. In addition, plaintiff reserved the right to respond to and cite defendant for any building code violations that were brought to its attention.

¶ 16 On September 8, 2011, plaintiff filed a petition for rule to show cause against defendant. The petition alleged that defendant had failed to pay the inspection fees as ordered by the trial court on July 12, 2011.

¶ 17 On October 25, 2011, the trial court entered a written order, which stated that defendant's attorney appeared on her behalf and tendered a check to plaintiff for the inspection fees defendant was previously ordered to pay. The trial court continued the rule to show cause to determine whether defendant should be held in contempt for failing to honor the trial court's prior order "as to painting and scraping of windows, sidewalk replacement, and payment of fines."

¶ 18 On December 13, 2011, and January 24, 2012, the trial court entered written orders continuing the matter for status review of defendant's completion of repairs.

¶ 19 On February 28, 2012, the trial court entered a written order continuing the matter for status of "defendant's completion of all open items on the city code violations inspection list

dated February 28, 2012." In addition, the court ordered defendant to "cooperate with the reinspection of the property." Although the written order referenced an inspection occurring February 28, 2012, the complaint is based on a list of violations based on a March 3, 2010, inspection of the building.[2]

¶ 20    On April 24, 2012, the trial court entered a written order stating that the matter was before the court for trial. Counsel for defendant represented to the court that defendant (who lived out of state) could not attend the trial because of her child's illness. The court ordered defendant to "clean the property of all debris, including abandoned furniture, and mow the grass." According to the order, defendant's failure to do so would result in plaintiff performing the work at defendant's expense. The matter was continued for trial "on all outstanding ordinance violations."

¶ 21    On May 22, 2012, defense counsel appeared; however, defendant herself failed again to appear for trial. The May 22 order noted that plaintiff moved for a judgment for defendant's failure to cure all building code violations. The trial court ordered defendant and all tenants of the building to vacate the premises immediately due to the building code violations. Further, the trial court allowed plaintiff to impose liens for its cleaning of the property and mowing of the grass. The trial court reserved its ruling on the fine, court costs, and expense to be awarded to plaintiff for defendant's failure to bring the property into compliance with the building code.

¶ 22    On July 24, 2012, defendant appeared in person along with her counsel. The trial court entered a written order stating defendant agreed "to perform the work identified in the February 28, 2012 inspection list and will also reinstall the missing front door and patch the front porch step concrete." The order directed defendant to allow plaintiff access to the building to perform further inspection.

¶ 23    On November 27, 2012, the trial court entered a written order directing defendant to allow plaintiff access to the property. The matter was continued for "review of code violations and defendant's obligation to bring the building into compliance with the building codes."

¶ 24    On February 26, 2013, the trial court entered a written order directing defendant to allow plaintiff to inspect the property. The matter was continued for a review of defendant's compliance with the "repair of building code violations."

¶ 25    On March 26, 2013, the trial court entered a written order continuing the matter for status and for trial scheduling. The trial court also ordered defendant to allow plaintiff to inspect the building prior to the trial scheduling date.

¶ 26    On April 9, 2013, the trial court entered a written order noting that defendant had arranged for plaintiff to visit the property for an updated inspection. Defendant was ordered to cooperate and allow the inspection. The matter was continued for trial scheduling.

¶ 27    On May 28, 2013, the trial court entered a written order again continuing the matter for trial scheduling. Defendant was ordered to provide plaintiff with access to the property and permit a full inspection of the premises. Defendant was also ordered to remove all abandoned furniture and garbage from the premises.

---

[2]The incomplete record on appeal does not reveal whether an inspection actually took place on February 28, 2012. Specifically, we note that the record is devoid of any inspection list dated February 28, 2012. The only inspection list found in the record is dated March 3, 2010.

¶ 28    On June 11, 2013, the trial court entered a written order that noted defendant had failed to contact plaintiff to schedule an inspection of the property. According to the order, the trial court was advised that the property did not have a certificate of inspection and, therefore, could not be occupied. The trial court ordered the following: (1) the property was to be vacated by all occupants within five days; (2) plaintiff was allowed to enter the property and abate the exterior of all garbage, debris, and materials and to lien the property for the cost; and (3) the matter was continued for status of vacating the property.

¶ 29    On June 25, 2013, the trial court entered a written order setting the matter for trial as to defendant's "building code violations" and "defendant's failure to secure applicable licenses and permits from the city for the operation of a multi-family rental structure."

¶ 30    On August 13, 2013, the trial court again entered a written order requiring defendant to arrange for an inspection of the building. The matter was continued for trial "concerning compliance with building codes and status of the certificate of registration."

¶ 31    On August 27, 2013, the trial court entered a written order that indicated the parties had "reached a settlement that the apartments shall be occupied as the city inspects and approves each unit for proper electrical heat." Defendant was ordered to repair the roof over the back porch of the building, paint the back porch, and repair the concrete steps leading to the basement from the front of the building. It is unclear from the record whether any of these obligations are included in the list of violations attached to the complaint. The matter was continued to determine whether defendant had complied with the court's order. The order stated that "[a]ll prior orders are vacated."

¶ 32    On August 26, 2014 (a year after the last court appearance), the parties returned to court. At the hearing, the trial court granted defendant leave to file her *pro se* motion to dismiss. In addition, the trial court granted defense counsel leave to file a motion to withdraw. The trial court set both motions and the status of defendant's compliance with the building code and city ordinances for hearing on September 23, 2014. The written order indicates that a copy of the motion to dismiss was served on plaintiff in open court.

¶ 33    In defendant's *pro se* motion to dismiss, she alleged that (1) plaintiff failed to notify defendant that the building had passed a final electrical inspection; (2) plaintiff did not correctly fix the sidewalk around the building; and (3) plaintiff's actions "constitute[ ] a clear case of discrimination against Defendant, has denied Defendant due process under the law, and has violated Defendant's rights under the First and Fourteenth Amendments of the United States Constitution." The motion to dismiss did not directly challenge the allegations of ordinance violations contained within plaintiff's complaint.

¶ 34                    II. September 23, 2014, to February 3, 2015

¶ 35    On September 23, 2014, the parties appeared for the hearing on defendant's *pro se* motion to dismiss, defense counsel's motion to withdraw, and the status of defendant's compliance with the building code and city ordinances. Unlike the prior hearings, the record on appeal includes a transcript from the September 23 hearing.

¶ 36    At the September 23, 2014, hearing, plaintiff's counsel reminded the trial court of its August 27, 2013, order allowing defendant's apartments to become occupied as plaintiff inspected and approved each unit for proper electrical and heat. Plaintiff's counsel explained, "[u]nfortunately, no one is letting the inspector into the properties, into the individual units." In

- 5 -

response, defense counsel informed the trial court that "Over the last four years, believe it or not, a list of violations have come and gone. Some have been cured and some things needed to get done and some don't get done. [Defendant] lives out of state. She lives in Virginia and she's been an absent landlord right now." Defense counsel proceeded to inform the court that he and defendant "had a disagreement of opinion about what should be going on" and the two agreed that defense counsel should be permitted to withdraw. The trial court granted defense counsel's motion to withdraw. Defendant continued *pro se* for the remainder of the proceedings.

¶ 37    As to defendant's *pro se* motion to dismiss, counsel for plaintiff informed the trial court that she was unaware of the motion to dismiss (the written order entered from the prior hearing indicated that a copy of the motion had been tendered to plaintiff in open court). The trial court did not have a hearing on the merits of the motion to dismiss but instead continued the motion for hearing. Defendant agreed to set the hearing for December 9, 2014.

¶ 38    The record on appeal does not contain a written order or a transcript from the December 9, 2014, hearing. However, the circuit clerk docket entry corresponding to December 9, 2014, indicates that defendant failed to appear for the hearing on her *pro se* motion to dismiss. The same docket entry stated the trial court struck defendant's *pro se* motion to dismiss and continued the matter for status on January 13, 2015.

¶ 39    On January 13, 2015, defendant again failed to appear in court. The record on appeal contains a transcript from the hearing. At the hearing, plaintiff reminded the trial court that defendant failed to appear at the previous hearing. Plaintiff noted that "even though work has been done and more violations, it appears works done, more violations appear, the property still does not have a certificate of inspection." Plaintiff then asked for an order "ordering the property to be vacated and a $750 judgment but I would like it to go back to not the day [the complaint] was filed" (May 11, 2010) but to August 10, 2010, the day defendant's attorney filed an appearance on her behalf. Plaintiff noted that "I think that might catch her attention." The trial court responded, "I think so, *** August 10th, 2010." The hearing ended when plaintiff stated, "I will make sure my calculator is working properly."

¶ 40    Instead of a written order, the trial court entered its findings in the docket sheet. As to count I (failure to abate municipal violations), the trial court entered an *ex parte* finding of guilt. Unlike the complaint, which alleged defendant violated section "8-355 of the Ordinances of the City of Joliet," the docket entry cites "8-335" as the applicable statute defendant violated.

¶ 41    Similar to count I, the trial court made an *ex parte* finding of guilt with regard to count II in the docket sheet. Unlike count II of the complaint, which alleged defendant committed the offense of "failure to allow an inspection of a rental unit," the trial court entered a finding of guilt for count II under the offense "unlawful occupancy of a rental."

¶ 42    The trial court imposed fines and costs in the amount of $119,620 for each count. The total judgment against defendant amounted to $239,240.

¶ 43    On February 3, 2015, the circuit clerk mailed defendant a "Notice of *Exparte* Judgment & Failure to Pay as Referenced in Section 6-306.6 of the Illinois Vehicle Code Supreme Court Rule 556." The notice stated that an *ex parte* judgment in the amount of $239,240 had been entered against defendant for "failure to appear in court on [the] return date." The notice did not include a statement that defendant had the right to file a motion to vacate the *ex parte* judgment.

¶ 44      Defendant did not file a postjudgment motion but did timely file a notice of appeal.

¶ 45                                         ANALYSIS

¶ 46      Defendant's argument on appeal is that the trial court erroneously entered judgment against her without notice. Defendant also argues that the fines are excessive because plaintiff failed to present evidence to support the fines. Plaintiff responds that both the judgment and the fines were proper because defendant failed to appear in person at scheduled hearings.

¶ 47      Before addressing the substance of the parties' arguments, we address the nature of the judgment entered against defendant. The trial court labeled the judgment against defendant as an "*Ex Parte*/finding of Guilty FAILURE TO ABATE VIOLATION" and an "*Ex Parte*/finding of Guilty UNLAWFUL OCCUPANCY OF A RENTAL." In their briefs, both parties use the term "default" and "*ex parte*" interchangeably. The two terms, however, are not synonymous. An *ex parte* judgment is entered where a party has appeared and filed an answer but fails to attend trial. See *In re Marriage of Drewitch*, 263 Ill. App. 3d 1088, 1094 (1994); *Ryan v. Bening*, 66 Ill. App. 3d 127, 131 (1978). The procedure for entry of an *ex parte* judgment is to hold a trial in the party's absence and require the opposing party to present evidence to prove their claim. *Drewitch*, 263 Ill. App. 3d at 1094. By contrast, a default judgment is entered where a party has *failed* to appear and file an answer to the complaint. *Id.* Where a party has not answered, there are no factual issues raised, and a trial court has the discretion to enter default judgment without an evidentiary hearing. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 66.

¶ 48      Here, we find the judgment entered against defendant was in the nature of a default judgment. While it is true that defendant did file an appearance in the trial court, there is no evidence in the record that she ever filed an answer. Stated another way, defendant never contested any of the facts alleged in plaintiff's complaint. While we recognize that defendant filed a *pro se* motion to dismiss, the motion failed to create a factual dispute with regard to any of the claims contained in plaintiff's complaint. Instead, the motion only raised an issue with regard to an electrical violation and the replacement of an exterior sidewalk. *Supra* ¶ 33. Significantly, this purported electrical violation and sidewalk allegation are not found within plaintiff's complaint. *Supra* ¶ 4. For purposes of clarity, we therefore refer to the judgment as a default judgment throughout the remainder of our analysis and now turn to the merits of defendant's appeal.

¶ 49      Defendant begins her argument by asserting that we must vacate the default judgment entered against her in light of the fact that she was not provided notice of the hearing in which the default was entered (January 13, 2015). After careful review, we find default judgment regarding liability was warranted under Illinois Supreme Court Rule 575(b) (eff. Dec. 7, 2011). Rule 575(b) provides the trial court with authority to enter a default judgment against a nonappearing party "at any proceeding for which the Court has not excused the defendant's appearance." *Id.* Here, the trial court entered default judgment against defendant when she failed to appear in person at two consecutive hearings (December 9, 2014, and January 13, 2015). We find nothing in the record indicating defendant's appearance from those hearings had been excused by the trial court. Thus, despite the trial court's mischaracterization, we find the trial court, in its discretion, properly entered a default judgment against defendant as to liability. *Id.*

¶ 50    With regard to defendant's specific claim that she was not afforded notice of the January 13, 2015, hearing, we emphasize that defendant fails to cite any facts in the record supporting her contention. Rather, defendant relies on the record's absence of a reference to defendant's notice of the hearing. While defendant is correct that there is no indication in the record that defendant did in fact receive notice, there is also nothing in the record affirmatively establishing that she did *not* receive notice. Under our supreme court's recent decision in *People v. Carter*, 2015 IL 117709, ¶ 23, defendant has failed to satisfy her burden as appellant and, therefore, may not assert this error on appeal.

¶ 51    In *Carter*, defendant argued on appeal that he was entitled to remand for further proceedings because he failed to adequately serve the opposing party with notice of his pleading, which he claimed he sent via regular mail instead of certified or registered mail. *Id.* ¶ 18. To support this contention, defendant relied on a "Proof/Certificate of Service" attached to the pleading that stated defendant placed the pleading in the "institutional mail." *Id.* ¶ 5. The certificate did not state that the letter had been sent by certified or registered mail as required by the rule. *Id.* The *Carter* court found the assumption that the language of the certificate of service affirmatively established transmittal by regular mail, and thus deficient service, was unwarranted by the record. *Id.* ¶¶ 18, 20.

¶ 52    In coming to this finding, the *Carter* court relied on the long-standing principal that it is an appellant's burden to provide a sufficient record from which a court may determine whether the claimed errors were made. *Id.* ¶ 19. The court went on to hold that "[t]o serve as a basis for defendant's contention of error, [defendant] must affirmatively establish that defendant mailed his petition via some means other than certified or registered mail." *Id.* ¶ 20. The court found defendant's certificate of service merely showed that it was mailed from the institutional mail through the United States Postal Service. *Id.* The court reasoned:

> "without an adequate record preserving the claimed error, we, as a court of review, must presume the circuit court's order conforms with the law. [Citation.] Applying that principle in this case, we cannot assume that defendant's service upon the State was deficient. Though the regular return receipt for certified mail—for example—is sufficient proof of service by certified mail (see *In re Dar C.*, 2011 IL 111083, ¶ 63 (citing 705 ILCS 405/2-16(1) (West 2006))), *the absence* of such a receipt in the record does not affirmatively establish that service by certified mail was *not* accomplished, as it is up to the sender to file the receipt or not. In this case, the matter of service—adequate or deficient—was simply not addressed by the parties in the circuit court." (Emphases in original.) *Id.* ¶ 23.

¶ 53    Applying the plain language of Rule 575(b) and the principles announced in *Carter*, we hold the trial court properly entered default judgment against defendant as to liability. Our inquiry, however, does not end there. "[A] default judgment comprises two factors: (1) a finding of the issues for plaintiff; and (2) an assessment of damages." *Wilson v. TelOptic Cable Construction Co.*, 314 Ill. App. 3d 107, 112 (2000). Defendant argues that the fines imposed by the trial court are excessive because plaintiff never presented any evidence supporting the basis for the fines. Upon review, we find the trial court erred in entering fines in the amount of $239,240 without requiring plaintiff to prove up its damages.

¶ 54    The only evidence received by the trial court with regard to the appropriateness of the fines imposed came from plaintiff's general request that the fines be calculated from the date defendant's counsel entered an appearance. Specifically, at the January hearing plaintiff stated:

"I would like the order to reflect is an order ordering the property to be vacated and a $750 judgment but I would like it to go back to not the day it was filed but the day [defendant] was served because that's the day that [defendant's counsel] would have entered his appearance and that day is August 10th, 2010. So I think that might catch her attention."

While defendant was properly defaulted with regard to liability, the fines imposed as a result of that default were entered in the absence of any evidentiary foundation. For example, plaintiff did not present the trial court with an affidavit from a city official identifying the amount of days any of the violations listed in the complaint were in existence. Pursuant to the Joliet Municipal Code, section 1-8(a), a defendant "shall be punished by a fine of not more than seven hundred fifty dollars ($750.00)" for each day the ordinance violation exists. Joliet Municipal Code § 1-8(a) (eff. Mar. 19, 1996). Without any evidence regarding the length of the defaulted violations, the trial court's entry of fines in the amount of $239,240 is erroneous. Stated another way, defendant was properly defaulted as to the existence of the violations contained within the complaint; however, plaintiff never proved up the duration of the defaulted violations.

¶ 55    In coming to this conclusion, we call attention to the fact that plaintiff referred to "new violations" at the January hearing that were not contained within the complaint. On a default, a party is not entitled to relief outside the original complaint. See *Joseph A. Thorsen Co. v. Evans*, 82 Ill. App. 3d 1119, 1123-24 (1980). We also note that several of the trial court's written orders entered during the proceedings below reference defendant's responsibility in removing debris from outside the building, mowing the grass, repairing the sidewalks around the building, installing smoke detectors, painting and scraping the windows, repairing the roof over the back porch, painting the back porch, and repairing the back steps leading to the basement. However, none of these obligations are included as violations in the complaint. Therefore, it is unclear if the trial court considered some of these obligations when entering fines in the amount of $239,240. The trial court did not make any oral ruling with regard to said fines. The information regarding the fines imposed is included in a docket entry. The docket entry, however, only shows the total amount imposed for each count. Specifically, under count I the trial court imposed $119,620 in total fines and costs and for count II the trial court imposed $119,620 in total fines and cost. In short, we cannot say that the trial court's unexplained fine calculation is proper, given the absence of any evidence offered by plaintiff and the fact that the trial court may have considered matters outside the complaint.

¶ 56    We hold that the proper remedy is to remand the matter for a limited hearing on the issue of fines, where defendant will have the opportunity to be heard on the matter of damages. We emphasize that

"[t]he mere fact that a defendant is defaulted does not give to the plaintiff a right or claim to the assessment of damages unrelated to liability ***. ***

*** Although defaulted, where the action is in tort or for an unliquidated claim or amount, a defendant nonetheless has the right to be heard on the matter of damages." *Molden v. Reid*, 200 Ill. App. 3d 495, 502 (1990) (quoting *Elfman v. Evanston Bus Co.*, 27 Ill. 2d 609, 614 (1963)).

¶ 57    We acknowledge defendant (who is acting *pro* se) has failed to cite appropriate authority in support of the arguments contained herein. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013).

Unlike the dissent, we do not see that we are obligated to find the arguments forfeited. The supreme court has reminded us of

> "the familiar proposition[s] that waiver and forfeiture rules serve as an admonition to the litigants rather than a limitation upon the jurisdiction of the reviewing court and that courts of review may sometimes override considerations of waiver or forfeiture in the interests of achieving a just result and maintaining a sound and uniform body of precedent." *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 33.[3]

In considering the totality of the circumstances we hold fundamental fairness requires that plaintiff be required to prove up its default damages and entitles defendant the opportunity to be heard on said matter. See *Goczeski v. Horizon Development Corp.*, 102 Ill. App. 3d 6, 9 (1981).

¶ 58 Lastly, we note the six-year odyssey this ordinance violation case has travelled. We therefore admonish plaintiff that it can only seek damages on remand for violations defendant was actually defaulted on, *i.e.*, violations contained within plaintiff's complaint. Likewise, should defendant choose to contest plaintiff's prove up, we admonish defendant to ensure her availability at any future proceedings or, alternatively, to obtain counsel to represent her interest at said proceedings. Trial court dockets are often high volume. The trial court is under no obligation to *continually* rearrange its docket to accommodate the schedule of plaintiff or defendant.

¶ 59                                                   CONCLUSION

¶ 60 The judgment of the circuit court of Will County is affirmed as to the issue of default on liability, vacated on the issue of fines, and remanded for further proceedings consistent with this opinion.

¶ 61 Affirmed in part and vacated in part.

¶ 62 Cause remanded with directions.

¶ 63 JUSTICE CARTER, dissenting.

¶ 64 The majority finds that the trial court properly entered default judgment[4] against defendant as to liability on plaintiff's complaint (*supra* ¶ 49) but erred in entering fines in the amount of $239,240 (*supra* ¶ 53). I dissent from the conclusion regarding fines on the grounds that the majority, in rendering its opinion, has ignored the well-established and universally accepted doctrine of forfeiture. Application of this doctrine is often vital to the proper and efficient administration of the courts. It is for these reasons that I would affirm the trial court's judgment on the ground that defendant has grossly failed to carry her burden as appellant.

---

[3]This idea that a reviewing court may address the merits of an issue notwithstanding waiver has been applied with equal force in civil and criminal cases. *E.g.*, *People v. Normand*, 215 Ill. 2d 539, 544 (2005) (addressing forfeited issue after noting that "the rule of waiver is an admonition to the parties and not a limitation on the jurisdiction of this court"). The court has referred to this idea as a " 'judicial economy' rationale for evading forfeiture." *People v. Hauschild*, 226 Ill. 2d 63, 73 (2007).

[4]I agree with the majority that judgment imposed here was in the form of a default, not *ex parte* (*supra* ¶ 48). Like the majority, I will also refer to the judgment as a default judgment throughout the remainder of my dissent.

¶ 65    The majority's opinion, in an apparent attempt to save defendant's appeal, has generalized defendant's argument in two sentences: (a) that the "trial court erroneously entered judgment against [defendant] without notice," and (b) "the fines are excessive because plaintiff failed to present evidence to support the fines" (*supra* ¶ 46). The majority fails to offer any further discussion of plaintiff's argument. Instead, the majority proceeds to independently analyze the reformulated argument by using analysis and authority plaintiff never presented. I begin my dissent by reviewing defendant's four specific arguments.

¶ 66    Defendant argues that the default judgment was improper because (1) the trial court failed to hold an evidentiary hearing with regard to an alleged electrical hazard, (2) defendant never received notice of the January 13, 2015, hearing in which the default judgment was entered, (3) the trial court erred in allowing new allegations of ordinance violations to be introduced without compelling plaintiff to amend the pleadings, and (4) the trial court denied defendant due process of law.

¶ 67    I believe defendant has forfeited review of all four of her arguments by failing to comply with Illinois Supreme Court Rule 341(h) (eff. Feb. 6, 2013). Rule 341(h) governs the requirements of the appellant's brief. *Id.* Specifically, Rule 341(h)(7) requires an appellant's brief to contain argument with "citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). The failure to comply with Rule 341(h)(7) results in the forfeiture of the argument. See *Velocity Investments, LLC v. Alston*, 397 Ill. App. 3d 296, 297-98 (2010).

¶ 68    There are several ways an appellant may violate Rule 341(h)(7). Failure to argue a point in the appellant's opening brief violates Rule 341(h)(7). *Vancura v. Katris*, 238 Ill. 2d 352, 369 (2010). The failure to elaborate on an argument, cite persuasive authority, or a present well-reasoned argument violates Rule 341(h)(7). *Velocity Investments*, 397 Ill. App. 3d at 298. Vague allegations or allegations that are merely listed do not satisfy Rule 341(h)(7). *Vancura*, 238 Ill. 2d at 369-70 (citing *People v. Phillips*, 215 Ill. 2d 554, 565 (2005) (issue forfeited where defendant raised it but failed to make any argument or citation to relevant authority); *People v. Franklin*, 167 Ill. 2d 1, 20 (1995) (issues forfeited where defendant provided no argument to support claims of error); *People v. Guest*, 166 Ill. 2d 381, 413-14 (1995) (one sentence in brief indicating that defendant "incorporate[d]" all claims made in earlier proceedings not sufficient to satisfy Rule 341, resulting in forfeiture of claims)). Moreover, "even where the brief includes both argument and citation, a party may nonetheless forfeit review if the cited authority is irrelevant and does not represent a sincere attempt to comply with the rule." *Vancura*, 238 Ill. 2d at 370 (" 'We do not view the inclusion of citations to irrelevant authority scattered throughout [plaintiffs'] brief to constitute even an attempt to comply with the rule.' " (quoting *Britt v. Federal Land Bank Ass'n of St. Louis*, 153 Ill. App. 3d 605, 608 (1987))).

¶ 69    The above examples are consistent with the principle that "[a] reviewing court is entitled to have issues clearly defined with pertinent authority cited and cohesive arguments presented [citation], and it is not a repository into which an appellant may foist the burden of argument and research [citation]." *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993). The rules are not mere suggestions but are compulsory. *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57. "Strict adherence to the standard is necessary to expedite and facilitate the administration of justice." *Mielke v. Condell Memorial Hospital*, 124 Ill. App. 3d 42, 48 (1984). It is neither

the function nor the obligation of this court to act as an advocate or search the record for error. *Id.* at 48-49.

¶ 70    I recognize that defendant is proceeding without the benefit of counsel. "However, that does not relieve [her] of the obligation to follow proper procedure." *Velocity Investments*, 397 Ill. App. 3d at 297-98.

¶ 71                          I. Evidentiary Hearing on Alleged Electrical Hazard

¶ 72    For clarity, I discuss separately each of defendant's forfeited arguments. With regard to her first argument, defendant contends that:

> "The trial court erred by continually denying [defendant's] requests for an evidentiary hearing. Instead, the trial court ordered [defendant] to comply with all City demands based on 'inaccurate' inspection reports and only minor building deficiencies.
>
> This process continued for years, preventing [defendant] from presenting evidence in court about the serious safety issue concerning the 800-Amp connection to the building and the liability it posed to [defendant].
>
> The service wires providing electricity to the outside meters are routed directly under the tenant's windows in reaching distance when they should be placed directly under the roof of the building. Any time [defendant] pointed this out to the inspectors or raised concerns about safety, the response by the City was that the matter of a loose door knob was more important (App. 3-5; App. 22). How was it possible that Mr. Sterr, Mrs. MacDonald or Mrs. Saleze were not familiar with electric code on the City Building Department webpage before appearing in court to make sure that [defendant's] building was in compliance with code. It is hard to believe that all three City Neighborhood inspectors were not familiar with something that important. (App. 30).
>
> The trial court never allowed [defendant] to question the veracity of testimony presented by the City, thereby denying her right to due process under the law. The actions taken by the trial court in establishing bias toward the City furthered discrimination against [defendant] and aided the City to continue the cover up of City inspectors' negligence concerning the safety of the hazardous electric connection."

¶ 73    Defendant does not cite any statute or Illinois Supreme Court Rule to support her argument. Rather, defendant follows this argument with generic citation to the following cases: *Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947), *United States v. McGee*, 714 F.2d 607, 613 (6th Cir. 1983), and *Charlton v. Estate of Charlton*, 841 F.2d 988, 989 (9th Cir. 1988). Defendant cites no other case law to support her argument. Significantly, defendant fails to offer any analysis of how the cited cases apply to the facts of this case. The failure to assert a well-reasoned argument supported by legal authority violates Rule 341(h)(7). See *Sakellariadis v. Campbell*, 391 Ill. App. 3d 795, 805 (2009). Without any meaningful development, defendant fails to offer this court any guidance as to how the cited case law is relevant, applies to the facts in this case, or entitles her to relief. Defendant's failure to do so violates Rule 341(h)(7). *Velocity Investments*, 397 Ill. App. 3d at 297-98.

¶ 74    Further, my cursory review of defendant's generic citations reveals that those cases dealt with the issuance of injunctive relief without an evidentiary hearing—not ordinance violations or judgments entered for a party's failure to attend multiple hearings. More importantly, those

cases involved parties that filed responsive pleadings. In *Sims* and *Charlton*, the courts held that an evidentiary hearing was necessary where the parties filed pleadings contesting issues of material fact. The majority correctly points out that defendant has not filed any pleading which disputes the allegations in the complaint (*supra* ¶ 48). The court in *McGee* ultimately found that an evidentiary hearing was not required.

¶ 75 Even if I were to ignore defendant's forfeiture of this argument (trial court failed to hold an evidentiary hearing regarding an alleged electrical hazard), defendant's allegation is simply unsupported by the record. I note that the complaint does not include an allegation regarding an electrical violation. There is also no judgment entered against defendant on this purported violation. Therefore, defendant is claiming she was deprived of an evidentiary hearing on a violation for which she was never found guilty. More importantly, there is no evidence in the record that this argument was ever presented to the trial court. It is simply unclear what defendant is referencing with regard to the alleged hazardous electrical connection.[5]

¶ 76 Defendant's argument also complains of allegedly " 'inaccurate' inspection reports" and "minor building deficiencies," but the trial court's written orders consistently show that defendant would not allow inspections. More importantly, the matter had been set for trial on defendant's ordinance violations on several occasions, but the trial never occurred due to defendant's multiple failures to appear in person. In particular, I note that defendant failed to appear in person for trial on May, 24, 2011; April 24, 2012; and May 22, 2012. Finally, defendant's conclusory claim of "bias" and "discrimination" on the part of the trial court is simply not borne by the record.

¶ 77 II. Defendant's Notice of the January 13, 2015, Hearing

¶ 78 As to defendant's second argument, she contends that she never received notice of the January 13, 2015, hearing in which the trial court entered the *ex parte* judgment. Defendant goes on to provide the following discussion of authority to support her claim:

> "In *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294 1986, the Illinois Supreme Court argued that it is essential to the validity of a judgment that the court have both jurisdiction of the subject matter of the litigation and jurisdiction over the parties. (*Lady v. Montgomery Ward & Co.* (1980), 80 Ill. App.3d 69, 72; *Federal Sign & Signal Corp. v. Czubak* (1978), 57 Ill. App.3d 176, 179.) Absent a general appearance, personal jurisdiction can be acquired only by service of process in the manner directed by statute. (*In re Marriage of Hostetler* (1984), 124 Ill. App.3d 31, 33; *Mercantile All-In-One Loans, Inc. v. Menna* (1978), 63 Ill. App.3d 931, 937; *Gocheff v. Breeding* (1977), 53 Ill. App.3d 608, 609-10.) The Code of Civil Procedure authorizes the service of process either by summons (Ill. Rev. Stat. 1981, ch. 110, ¶¶ 2-203, 2-204, 2-205) or by publication and mailing (Ill. Rev. Stat. 1981, ch. 110, ¶ 2-206). A judgment rendered without service of process, either by summons or by publication and mailing, where there has been neither a waiver of process nor a general appearance by the defendant, is void regardless of whether the defendant had actual knowledge of the proceedings. (*Stankowicz v. Gonzalez* (1981), 103 Ill. App.3d 828, 831; *First*

---

[5]I note that defendant's *pro se* motion to dismiss raised an issue regarding a purported electrical violation, but that argument related to the heat in the apartment. The complaint does not include an allegation regarding either the electrical wiring or heat.

- 13 -

*Federal Savings & Loan Association v. Brown* (1979), 74 Ill. App.3d 901, 905.) Moreover, a party attacking a judgment for lack of personal jurisdiction due to defective service of process is not restricted by either the time limitations or the 'due diligence' requirements of section 2-1401 of the Code of Civil Procedure. (*In re Marriage of Parks* (1984), 122 Ill. App.3d 905, 309\*309 909; *Home State Savings Association v. Powell* (1979), 73 Ill. App.3d 915, 917; Ill. Rev. Stat. 1981, ch. 110, ¶ 2-1401(f).) Accordingly, a judgment rendered by a court which fails to acquire jurisdiction of either the parties or the subject matter of the litigation may be attacked and vacated at any time or in any court, either directly or collaterally. *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill.2d 304, 309; *Johnston v. City of Bloomington* (1979), 77 Ill.2d 108, 112.

Section 2-203 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, ¶ 2-203) governs the mode of service of summons upon an individual defendant. That section provides in pertinent part:

'(a) Except as otherwise expressly provided, service of summons upon an individual defendant shall be made (a) by leaving a copy thereof with the defendant personally or (b) by leaving a copy at the defendant's usual place of abode, with some person of the family, of the age of 13 years or upwards, and informing that person of the contents thereof, provided the officer or other person making service shall also send a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode. The certificate of the officer of affidavit of the person that he or she has sent the copy in pursuance of this Section is evidence that he or she has done so.' (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 110, ¶ 2-203(a).)

The trial court erred in proceeding with *ex parte* judgment against [defendant] when failure of service of process had occurred. The trial court also erred by imposing an excessive fine contrary to provisions of protection of civil rights under the Fourteenth Amendment of the U.S. Constitution.

Moreover, [defendant] had discovered that there is no written order (information from the Office of Circuit Court Clerk and lack of such in Court Record) from January 13, 2015, nor has the City provided [defendant] with such order. Transcripts from the trial date have been withheld from [defendant] despite [defendant] having requested such with payment. (cf. [defendant's] Motion for Extension of Time in Appellate Court), thus impeding her right to appeal. The recently obtained transcripts abruptly ends after 27 lines without the presiding Judge concluding matters before him (Ctr.2-3), thus failing to provide evidence of what really transpired during the hearing. With [defendant] absent in court, nowhere is it mentioned in the transcript that the Judge made sure that [defendant] had been properly served by the City (Ctr.2-3)."

¶ 79    I initially note that the authority cited by defendant concerns the trial court's ability to acquire personal jurisdiction over a party via service of process of the *original complaint*. Because defendant filed an appearance, there is no question with regard to personal jurisdiction. See *In re M.W.*, 232 Ill. 2d 408, 426 (2009) (a defendant "may consent to personal jurisdiction by his appearance"). Defendant cites to no other case law, statute, or Illinois Supreme Court Rule to support her contention that she was entitled to *additional* notice of the January 13, 2015, hearing.

- 14 -

¶ 80    Further, defendant fails to develop any well-reasoned argument to support her contention or offer any analysis of how the authority she cites entitles her to *additional* notice of the January 13, 2015, hearing. Nor does defendant develop any argument to support her claim that she is entitled to relief for the failure to receive notice of the hearing. Instead, defendant follows her boilerplate recitation of the law concerning service of process with a conclusory assertion that the trial court erred in entering *ex parte* judgment "when failure of service of process had occurred" and imposed an "excessive" fine in violation of her constitutional rights. While I acknowledge that generically citing to inapplicable authority is not tantamount to failing to cite authority altogether (*Vancura*, 238 Ill. 2d at 371), I reemphasize that defendant has failed to cite any applicable law or make any effort at developing her argument. Defendant's failures violate Rule 341(h)(7). *Velocity Investments*, 397 Ill. App. 3d at 298.

¶ 81    Even if I were to excuse defendant's forfeiture of her second argument (her notice of the January 13, 2015, hearing), I, like the majority (*supra* ¶¶ 50-52), would find that defendant has failed to meet her burden as appellant in affirmatively establishing the error based on the record. See *Carter*, 2015 IL 117709, ¶ 23.

¶ 82                         III. Plaintiff's Failure to Amend the Complaint

¶ 83    Defendant's third argument is titled "Lack of Proper Introduction of New Pleadings to Original Complaint." To illustrate its deficiency, I quote defendant's third argument in its entirety:

> "The City, by and through Attorney Kucharz, never filed amended pleadings when introducing new violations in the trial court, thus creating a never ending process that epitomizes that of a kangaroo court:
>
> [Defense Counsel]: Over the last four years, believe it or not, a list of violations have come and gone (Ctr. 7, lines 21-23).
>
> The original list of violations filed on March 26, 2010, was promptly satisfied (Ctr. 2, line 13-14).
>
> Subsequent claims made in the trial court by the City on the basis of new lists created by Neighborhood Services should have been properly introduced in the trial court. [Defendant] argues that the order of January 13, 2015 is unrelated to the original pleading (C. 4) and the claim on exhibit as being so defined for the ticket of violations of March 26, 2010 (C. 52), for which the violations were corrected (Ctr .2, line 13-14)
>
> The trial court erred in allowing recurrent violations to be introduced into court outside of those contained within the original pleading without compelling the City to file amended, i.e. supplemental pleadings, as a matter of civil procedure.
>
> > Sections 2-609 and 2-610 of the Code of Civil Procedure (735 ILCS 5/2-609 and 610) governs procedures of supplemental pleadings. That section provides in pertinent part:
> >
> > Sec. 2-609. Supplemental pleadings. Supplemental pleadings, setting up matters which arise after the original pleadings are filed, may be filed within a reasonable time by either party by leave of court upon terms.
> >
> > Sec. 2-610. Pleadings to be specific. (a) Every answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates."

¶ 84　　Like her first and second arguments, defendant's third argument is undeveloped. Defendant cites no case law or Illinois Supreme Court Rule to support her argument. Rather, the lone authority cited by defendant is sections 2-609 and 2-610(a) of the Code of Civil Procedure (735 ILCS 5/2-609, 2-610(a) (West 2014)). While section 2-609 permits the amendment of pleadings and section 2-610(a) requires pleadings to be specific, defendant fails to explain the relevance of either section or provide *any* analysis of her claim. Instead, defendant merely recites the statutes *verbatim* at the end of her argument. I again emphasize that defendant has failed to give this court any guidance on how these statutes *are* relevant, apply to her claim, or entitle her to any relief. Defendant's failure to do so violates Rule 341(h)(7). *Velocity Investments*, 397 Ill. App. 3d at 298.

¶ 85　　Even if I were to excuse defendant's forfeiture of her third argument (the failure to amend the complaint to add new violations), defendant fails to specifically identify (on appeal) the purported violations that she "corrected." Defendant also fails to specifically identify (on appeal) the purported "new" violations she claims she was charged with that are not included in the original complaint. In short, defendant fails to advance any specific argument regarding these undefined violations she now challenges here on appeal.

¶ 86　　Moreover, even if I assume defendant's undefined claim regarding the "corrected" and "new" violations is true, nothing in the record establishes that defendant directly challenged (in the trial court) any purported violations that had been "corrected." The record is also devoid of any evidence that defendant contested (in the trial court) the addition of any alleged "new" violations. While defendant quotes a sentence from her attorney's statement at the hearing on his motion to withdraw,[6] the fact remains that defendant never filed a responsive pleading that directly challenged the allegations of plaintiff's complaint. Stated another way, the record does not show that defendant ever legally contested any of the allegations in the complaint. Simply citing to one orally pronounced statement by her advocate while he attempts to withdraw does not constitute a proper legal pleading, answer, or challenge. I recognize defendant filed a *pro se* motion to dismiss. However, the motion did not create a factual dispute with regard to any of the claims in the complaint or in the trial court's judgment. Even if the motion had created such a dispute, I note that it was stricken when defendant failed to appear for a hearing on the motion. Defendant cannot now pursue unsubstantiated claims that could have been made below.

¶ 87　　The majority avoids reaching this conclusion by independently reviewing the record and setting out all the "reference[s]" the trial court made with regard to "obligations" defendant had outside plaintiff's complaint. *Supra* ¶ 55. The majority proceeds to conclude that "it is unclear if the trial court considered some of these obligations when entering fines in the amount of $239,240." *Supra* ¶ 55. I respectfully submit the majority's reasoning, however, is misguided. The question is not whether the record is unclear. Instead, the correct inquiry is whether defendant has presented *affirmative* evidence on appeal showing that the trial court actually relied upon these "reference[s]" when fashioning its fine. All reasonable presumptions are in favor of the action of the trial court, and absent an *affirmative* showing to the contrary, a reviewing court must assume that the trial court understood and applied the law and facts correctly. *In re Marriage of Powers*, 252 Ill. App. 3d 506, 510 (1993). The majority's analysis

---

[6]"Over the last four years, believe it or not, a list of violations have come and gone." (Internal quotation marks omitted.) *Supra* ¶ 36.

directly ignores this principle.

¶ 88                                   IV. Due Process

¶ 89        In her fourth argument, defendant asserts that the trial court denied her due process of law. As best I can discern, defendant's argument is that the fines imposed were excessive and the trial court erred by entering judgment without requiring plaintiff to submit a calculation of the fines or enter a written order explaining how it determined the fines imposed. Defendant cites no statute, Illinois Supreme Court Rule, or case law to support her argument. Defendant's fourth argument is more deficient than her first three arguments in that she offers *no* authority to support her contention. Defendant has simply forfeited her fourth argument on a multitude of levels.

¶ 90        Unlike defendant's other contentions on appeal, I believe it would be inappropriate to address defendant's fourth contention—even in hypothetical terms. This court "is not a repository into which an appellant may foist the burden of argument and research [citation]." *Saville*, 253 Ill. App. 3d at 682. Furthermore, to hypothetically address defendant's fourth argument would place this court in the position of offering an advisory opinion. See *George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 76 (1986).

¶ 91                                   V. Conclusion

¶ 92        While I have held defendant has forfeited her four arguments on appeal for failure to cite relevant authority and present well-reasoned argument, I would be remiss if I did not also note that defendant's brief runs afoul of several other subsections of Rule 341 and Rule 342. Rules 341 and 342 govern the procedure concerning appellate briefs. Ill. S. Ct. R. 341 (eff. Feb. 6, 2013); R. 342 (eff. Jan. 1, 2005). Rule 341(c) requires the appellant to submit a signed certification along with the brief that indicates the brief complies with the form and length paragraphs for briefs under Rules 341(a) and (b). Ill. S. Ct. R. 341(c) (eff. Feb. 6, 2013). Defendant failed to submit such a certification. Rule 341(h)(1) requires the appellant to provide a summary statement titled "Points and Authorities." Ill. S. Ct. R. 341(h)(1) (eff. Feb. 6, 2013). Defendant has provided such a statement; however, it is not in compliance with the rule as it does not include argument headings or references to the pages on the brief where each authoritative citation appears. Defendant's brief also fails to set forth the applicable standard of review in violation of Rule 341(h)(3). See Ill. S. Ct. R. 341(h)(3) (eff. Feb. 6, 2013) ("The appellant must include a concise statement of the applicable standard of review for each issue, with citation to authority ***.").

¶ 93        In addition, defendant included documents in her appendix that are not part of the record in violation of Rule 342(a). Ill. S. Ct. R. 342(a) (eff. Jan. 1, 2005). My review of defendant's claims of error is restricted to matters of record. A party may not rely on matters outside the record to support its position on appeal. *Keener v. City of Herrin*, 235 Ill. 2d 338, 346 (2009). "When a party's brief fails to comply with that rule, a court of review may strike the brief, or simply disregard the inappropriate material." *Id.* Here, defendant has failed to provide us with the report of proceedings for over four years of hearings. Yet, she makes several assertions with regard to such hearings. She has also attached several documents to the appendix of her brief. However, these documents are not part of the record. Such assertions and references must be disregarded. *Id.*

¶ 94        Accordingly, it is for these reasons that I would affirm the trial court's judgment.